FILED'10 SEP 13 14:31 USDC-ORE

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

MICHELLE DERRY,                                      09-CV-6187-TC

                         Plaintiff,

            v.                                       ORDER

EDM ENTERPRISES , INC., dba
AMERICAN HOSPICE EQUIPMENT CO.,
and ALEX ARIAS, and DOES 1-10,

                         Defendants.

COFFIN, Magistrate Judge:

    Plaintiff Michelle Derry asserts several state statutory claims against her former employer EDM

Enterprises: (1) disparate treatment sex discrimination ;  (2) retaliation for complaints of sex

discrimination; (3) hostile work environment sex discrimination; (4) disparate treatment sexual

orientation discrimination; (5) retaliation for complaints of sexual orientation discrimination; and

(6) hostile work environment sexual orientation discrimination.  Plaintiff also asserts two common

law claims solely against her former supervisor Alex Arias: (1) battery; and (2) assault.  She asserts

two claims against EDM Enterprises and Arias: (1) intentional infliction of emotional distress; and

Page 1 - ORDER

(2) negligent infliction of emotional distress. Finally, plaintiff asserts a common law claim for wrongful termination against EDM Enterprises.

Presently before the court is defendant EDM Enterprises' motion (# 53) for summary judgment, defendant Arias' motion (#47) to dismiss the claim for negligent infliction of emotional distress ,and defendant Arias' motion (#49) motion for summary judgment.

## Legal Standard

Federal Rule of Civil Procedure 56 allows the granting of summary judgment:

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). There must be no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

The movant has the initial burden of establishing that no genuine issue of material fact exists or that a material fact essential to the nonmovant's claim is missing. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). Once the movant has met its burden, the burden shifts to the nonmovant to produce specific evidence to establish a genuine issue of material fact or to establish the existence of all facts material to the claim. Id.; see also, Bhan v. NME Hosp., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991); Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1105 (9th Cir. 2000). In order to meet this burden, the nonmovant "may not rely merely on allegations or denials in its own pleading," but must instead "set out specific facts showing a genuine issue of fact for trial." Fed. R. Civ. P. 56(e).

Material facts which preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. Anderson, 477 U.S. at 248. Factual disputes

are genuine if they "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. On the other hand, if, after the court has drawn all reasonable inferences in favor of the nonmovant, "the evidence is merely colorable, or is not significantly probative," summary judgment may be granted. Id.

## General Factual Background

Plaintiff was hired November 25, 2008 at defendant EDM to work as a delivery driver. Defendant Alex Arias hired her and he was her immediate supervisor throughout her entire employment in Oregon. A delivery driver's duties include cleaning equipment, delivering equipment, setting up equipment, and explaining how equipment operates to terminally ill patients, family members and adult foster home employees. Plaintiff alleges that she was subjected to harassing comments and discriminatory treatment by Arias. Her attorney at the time sent a letter of complaint from Oregon to EDM's CEO in Alabama on April 22, 2009. Plaintiff was terminated on April 24, 2009 by Arias for the stated reason of insubordination. Further facts of this case will be provided as needed in the sections below.

## Discussion

Hostile Work Environment Claims

With respect to state law claims under ORS § 659A.030, federal decisions under Title VII generally are instructive. Fred Meyer, Inc. v. Bureau of Labor and Indus., 152 Or. App. 302, 310 (1998); Holien v. Sears, Roebuck and Co., 298 Or. 76 (1984).

A hostile environment exists when an employee can show

> (1) that he or she was subjected to sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe and pervasive to alter the

Page 3 - ORDER

conditions of the victim's employment and create an abusive working environment.

Ellison v. Brady, 924 F.2d 872, 875-76 (9th Cir. 1991). The required showing of severity or

seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the

conduct. Steiner v. Showboat Operating Co., 25 F.3d 1459, 1463, n.4 (9th Cir. 1994).

Conduct that is not severe or pervasive enough to create an objectively hostile or abusive

work environment is beyond the reach of Title VII, but "Title VII comes into play before the

harassing conduct leads to a nervous breakdown. An abusive work environment, even one that does

not seriously affect employees' psychological well-being, can and often will detract from employees'

job performance, discourage employees from remaining on the job, or keep them from advancing

in their careers." Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993). Whether an environment is

hostile or abusive is determined by looking at all the circumstances, including "the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

offensive utterance; and whether it unreasonably interferes with an employee's work performance."

No single factor is required. Id.

Defendant EDM's does not attack plaintiff's hostile work environment claims on the basis

they lack the required elements for such claims. Rather, EDM asserts an affirmative defense. Under

Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 765 (1998), and Faragher v. City of Boca Raton,

524 U.S. 775, 807 (1998), an employer may raise an affirmative defense to damages or liability when

subject to vicarious liability for the actions of a supervisor with immediate authority over an

employee. EDM must show by a preponderance of the evidence: (1) "that the employer exercised

reasonable care to prevent and correct promptly any sexually harassing behavior;" and (2) "that the

plaintiff employee unreasonably failed to take advantage of any preventive or corrective

opportunities provided by the employer or to avoid harm otherwise." <u>Ellerth</u>, 524 U.S. at 765. However, the defense is not available if the "supervisor's harassment culminates in a tangible employment action such as, discharge, demotion or undesirable reassignment." <u>Id.</u>

The defense is not available in the present case because EDM has  not shown that plaintiff unreasonably failed to take advantage of corrective opportunities provided by EDM.  Plaintiff's failure to take advantage of corrective opportunities for the majority of her employment was not unreasonable for several reasons:  plaintiff's alleged harrasser was her immediate supervisor, Arias, who also had the ability to fire her; the only other EDM representative to contact regarding harassment, CEO Ed Morgan, was in Alabama and his phone number was not readily available; plaintiff provided evidence that Arias told plaintiff and other employees that any complaint would need to go through him and plaintiff understood that to mean she could not contact Morgan directly and that Arias discouraged the employees from contacting Morgan about complaints;  plaintiff was "afraid to contact Morgan because he was part of the Mafia, old school Mafia, and so ... you didn't go that route," Derry Deposition at 140; and Morgan did come out to EDM once when plaintiff was employed there, but on the first day of Morgan's visit Arias had assigned plaintiff to make deliveries all day and she was  away from the office, on the second day, Morgan had breakfast with all the employees and afterwards Arias was again sent out on deliveries all day, Arias did not leave plaintiff alone with Morgan and plaintiff did not feel like she could approach Morgan, as everyone was present. <u>See</u> <u>Swinton v. Potomac Corporation</u>, 270 F.3d 794 (9th Cir. 2001), <u>cert. denied</u>, 533 U.S. 1018 (2002) (employee who suffered a coworker's racial harassment was not barred by failure to utilize employers' formal complaint procedures where a supervisor joined in the harassment, employee was afraid of complaining because coworker carried a gun and employee feared losing job

Page 5 - ORDER

because he was "low man on the totem pole").

   Plaintiff's motion on the hostile environment claims is denied.[1]


Disparate Treatment Claims

   The state claims for disparate treatment may be analyzed like federal claims for disparate

treatment. See Henderson v. Jantzen, Inc., 79 Or.App. 654, 657 (1986) (adopting Supreme Court's

formulation of prima facie case). Such claims are analyzed under the burden shifting standard of

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this approach, plaintiff must

establish that (1) she was a member of a protected class; (2) she was qualified for her position; (3)

she experienced an adverse employment action; and (4) similarly situated individuals outside the

protected class were treated more favorably, or other circumstances surrounding the adverse

employment action give rise to an inference of discrimination. Peterson v. Hewlett-Packard Co., 358

F.3d 599, 603 (9th Cir. 2004). If plaintiff establishes these elements, then the burden shifts to

defendant to produce some evidence demonstrating a legitimate, nondiscriminatory reason for the

employment actions it took. McDonnell Douglas, 411 U.S. at 802. If defendant meets this burden,

any presumption that defendant discriminated drops from the case, and the plaintiff must then show

that defendant's alleged reasons for the actions were merely a pretext for discrimination. St. Mary's

Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993). The burden of persuasion, as opposed to

production, however, remains with the plaintiff at all times. Id. at 511. Plaintiff may prove pretext

either directly by persuading the court that a discriminatory reason more likely motivated the

---

   [1]In addition to the above, it is unclear at this point if Arias' alleged harassment culminated
in plaintiff's discharge, see pp. 15-16 of plaintiff's memo in response (#82). If so, the defense
would also be unavailable on that basis. See Ellerth, 542 U.S. at 765.

employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. Raad v. Fairbanks North Star Borough School Dist., 323 F.3d 1185, 1196 (9th Cir. 2003).

Defendant EDM did not initially attack plaintiff's disparate treatment claims on the basis that they lacked the required elements for such claims, but asserted the Faragher affirmative defense as set forth above. In its reply, EDM acknowledged that the Fargher defense is typically not applied to disparate treatment claims and asserted, for the first time, that plaintiff has failed to make out a prima facie case of disparate treatment harassment. EDM's motion against the disparate treatment claims is denied due to its untimeliness, EDM's concessions at oral argument regarding the pleading of the elements  and the need for a fuller record on this matter (See p. 8 of memo in support of plaintiff's response (#82)).


Retaliation Claims and Wrongful Discharge Claim

The state claims for retaliation may be analyzed like federal claims for retaliation. See, e.g., Harris v. Pameco Corp., 170 Or. App. 164, 179 (2000). To prevail on a retaliation claim, plaintiffs must show: (1) that they engaged in a protected activity; (2) that they suffered an adverse employment action; and (3) that there is a causal connection between the protected activity and the adverse employment action. Elvig v. Calvin Presbyterian Church, 375 F.3d 951, 965 (9th Cir. 2004).

After an extensive discussion of the Amended Complaint and questioning by this court at the oral argument, plaintiff conceded that the retaliation claims were based solely on the protected activity of plaintiff's letter of complaint to Morgan. EDM has established that there is no causal connection between the letter and Arias' termination of plaintiff because Morgan did not receive the letter prior to the termination. Because EDM has established that this essential element of plaintiff's claim is

Page 7 - ORDER

missing, the burden shifts to plaintiff to produce specific evidence to establish a genuine issue of material fact or to establish the existence of all facts material to the claim. Plaintiff has entirely failed to meet this burden. The retaliation claims and wrongful discharge claim which, is also based on the letter (see paragraph 44 of Amended Complaint), are dismissed.

Intentional Infliction of Emotional Distress

To prevail on an intentional infliction of emotional distress claim, plaintiffs must demonstrate that (1) defendants intended to inflict severe emotional distress, (2) defendants' acts were the cause of plaintiffs' severe emotional distress, and (3) defendants' acts constituted an extraordinary transgression of the bounds of socially tolerable conduct. McGanty v. Staudenraus, 321 Or. 532, 543 (1995).

The intent element of IIED is satisfied not only where the actor desires to inflict severe emotional distress, but also where he knows that such distress is certain, or substantially certain to result from his conduct. McGanty, 321 Or. at 550.

It is for the trial court to determine, in the first instance, whether a defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. If the minds of reasonable men would not differ on the subject, the court is obliged to grant summary judgment. Pakos v. Clark, 253 Or. 113, 132 (1969).

Various factors bear upon the offensiveness of the conduct, including whether a special relationship exists between the defendant and the plaintiff, such as that of physician-patient, counselor-client, or common carrier-passenger. Williams v. Tri-County Metropolitan Transportation District of Oregon, 153 Or.App. 686, 689-90 (1998); Erickson v. Christenson, 99 Or.App. 104, 107,

Page 8 - ORDER

rev dismissed 311 Or. 266 (1991). Other factors include whether the conduct was undertaken for an ulterior purpose or to take advantage of an unusually vulnerable individual. See Checkley v. Boyd, 170 Or.App. 721 (2000). The setting in which the allegedly outrageous conduct occurs--for example, in a public venue or within the employment context--also can bear on the degree of offensiveness of the conduct. See, e.g., Hall, 292 Or. at 137; Trout v. Umatilla Co. School Dist., 77 Or.App. 95, 102 (1985).

The mere fact that an employer overworks employees, makes unreasonable demands upon them, and is otherwise less than a model employer does not by itself constitute an extraordinary transgression of the bounds of socially tolerable conduct under Oregon law. Cf Madani v. Kendall Ford Co., 312 Or 198, 203-06 (1991) (terminating employee for refusing to pull down his pants); Patton v. J.C. Penney Co., 301 Or 117, 124 (1986) (employee terminated because he refused to stop dating co-worker); Watte v. Edgar Maeyens, Jr., M.D., P.C., 112 Or.App. 234, 237 (1992) (employer threw a tantrum, screamed and yelled at his employees, accused them of being liars and saboteurs, then fired them all); Snyder v. Sunshine Dairy, 87 Or.App. 215, 218 (1987) (inconsistent and excessive supervision, unjustified reprimands (emphasis added), threats of termination, requiring the employee to perform menial tasks). See also Wells v. Thomas, 569 F.Supp 426, 433 (EDPa 1983) (placing plaintiff in newly created position without responsibilities, taking away her private office, reassigning her secretary, allowing her phone calls to go unanswered, giving her poor performance evaluations for the first time in 25 years, and terminating her); Beidler v. W.R. Grace, Inc., 461 F.SUPP 1013 (EDPa 1978), aff'd 609 F.2d 500 (3rd Cir. 1979) (plaintiff excluded from meetings necessary to perform his job, found papers constantly rearranged on his desk to annoy him, informed he would be given a new assistant without consultation, learned from rumors that his job was in

jeopardy, and evaded by his superior who intimated that the new assistant would be replacing him). Johnston v. Pets Rx, Inc., 2007 WL 2746918 (D. Or)(plaintiff subjected to hostile work environment with several comments and physical actions).

Plaintiff asserts in her Amended Complaint and deposition testimony that Arias directed numerous comments and actions towards her. See p.p. 4-5 of plaintiff's memo in response (#82)(e.g., calling plaintiff a "dyke bitch," "cunt," and "bitch," asking "who wears the strap on dildo?" and for naked pictures of plaintiff's girlfriend, simulating female masturbation and when plaintiff had a cut on her index finger, Arias held up his ring and middle finger and wiggled them and told plaintiff she would have to use those fingers to have sexual relations with her girlfriend, and throwing a sweatshirt in her face, approached her from behind and beating her with his hands on her back "pretty hard", and grabbing her hips in sexual parody).   While such comments and actions are certainly offensive and inappropriate and difficult to endure, and could possibly form the basis of a hostile environment claim, they are not sufficiently egregious to constitute an extraordinary transgression of the bounds of socially tolerable conduct in the circumstances of this case for several reasons, including their duration of five months, the fact they did not take place in public and the aforementioned case law.

Even if there could be an I.I.E.D claim, EDM is not responsible for Arias' alleged actions here. Under the doctrine of respondeat superior, an employer is liable for an employee's torts when the employee acts within the scope of employment. Negligence or other tortious conduct by the employer is not required. Chesterman v. Barmon, 305 Or. 439, 442 (1988). An employee's act is within the scope of his employment if (1) it occurs substantially within the time and space limits authorized by the employment; (2) the employee is motivated at least in part by a purpose to serve

the employer; and (3) the act is of a kind that the employee was hired to perform. Id.    Arias and

his actions do not meet parts (2) and (3) of the test and the fact that employment provides the

opportunity to engage in the conduct is not enough. See Vinsonhaler v. Quantum Residential Corp.,

189 Or.App. 1, 6-7 (2003) (The fact that employment provided an opportunity to engage in tortious

conduct is insufficient to establish the requisite nexus with employment as a matter of law).


Reckless Infliction of Emotional Distress

Even if a cause of action for reckless infliction of emotional distress exists in Oregon, summary

judgment is appropriate because, as discussed above,  the alleged conduct does not qualify as an

extraordinary transgression of the bounds of socially tolerable conduct, and moreover, EDM is not

responsible, as discussed above.


Assault and Battery

Summary judgment is precluded on these claims as there are issues of fact as to Arias' intent in

the alleged actions these claims are based on.


## Conclusion

Defendant EDM Enterprises' motion (# 53) for summary judgment, defendant Arias' motion

(#47) to dismiss the claim for negligent infliction of emotional distress ,and defendant Arias' motion

(#49) motion for summary judgment are allowed to the  extent that the retaliation claims, the

wrongful discharge claim, the intentional infliction of emotional distress claims, and the reckless

Page 11 - ORDER

infliction of emotional distress claims are dismissed.  The remainder of the motions are denied.  The

remaining claims are ready for trial.


DATED this _____ day of September, 2010  .


_____

THOMAS M. COFFIN
United States Magistrate Judge


Page 12 - ORDER